UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHELLIE R. STUCKER,

    Petitioner,

v.                                        Case No. 4:21-cv-11-MW/MJF

ERICA STRONG,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Shellie R. Stucker ("Stucker") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking redress of the Bureau of Prison's ("BOP") alleged failure to provide her with earned time credits ("ETCs") toward her sentence of imprisonment. Doc. 1. The government has moved to dismiss the petition because Stucker failed to exhaust her administrative remedies and her petition is premature. Doc. 8. Stucker has not responded to the government's motion to dismiss. The undersigned recommends that the District Court deny Stucker's petition because she failed to exhaust her administrative remedies and her petition is premature.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I. Background

## A. <u>Stucker's Conviction and Sentence</u>

In 2015, in the United States District Court for the Western District of Missouri, a grand jury charged Stucker with:

**Count One**: felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

**Count Two**: possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

*United States v. Stucker*, No. 2:15-cr-4014-BCW-1, Indictment, ECF No. 1 (W.D. Mo. April 2, 2015).[2]

On October 13, 2015, the government also charged Stucker in a superseding information with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). *Stucker*, Superseding Information, ECF No. 18 (W.D. Mo. Oct. 13, 2015). Stucker waived her right to prosecution by indictment

---

[2] The undersigned takes judicial notice of the documents filed in the United States District Court for the Western District of Missouri. Under Federal Rule of Evidence 201(b), a court may take "judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). The parties should have received copies of these documents. Regardless, the documents can be obtained from the clerk of the respective court. Documents filed in Stucker's criminal case are delineated "ECF No. __." Documents filed in the instant case are referenced as "Doc. __."

and pleaded guilty to Count One and Count Two as amended by the superseding information. Doc. 1 at 2, 7; Doc. 8 at 2; *Stucker*, Report and Recommendations, ECF No. 22 (W.D. Mo. Oct. 13, 2015).

On July 26, 2016, the United States District Court for the Western District of Missouri sentenced Stucker to 96 months of imprisonment for each count to run concurrently. Doc. 8 at 2; *Stucker*, Judgment and Commitment, ECF No. 35 (W.D. Mo. July 26, 2016). The BOP incarcerated Stucker at the Federal Correctional Institution, Tallahassee ("FCI Tallahassee").

**B.     Stucker's Claim**

On January 11, 2021, Stucker filed a section 2241 petition. Doc. 1. On January 15, 2021, Stucker also filed documents in support of her petition. Doc. 4. Stucker's petition raises one claim: "Violation of United States law pursuant to the First Step Act of 2018 – Application of time credits and statutory interpretation of applicable credits." Doc. 1 at 3, ¶ 7(a). According to Stucker, she has accumulated 240 days of ETCs. *Id.* at 9. Stucker requests "[i]mmediate application of the [ETCs] under the First Step Act and the Second Chance Act (18 U.S.C. 3624(c)(2))."[3] *Id.* at 6, ¶ 8.

---

[3] Stucker does not address how the Second Chance Act supports her section 2241 petition. Instead, Stucker's argument relies solely on the First Step Act ("FSA"). *See* Doc. 1 at 7-9; Doc. 4 at 2.

C. **The Government's Motion to Dismiss**

The government has filed a motion to dismiss this action for failure to exhaust administrative remedies and for raising a premature claim. Doc. 8. First, the government contends that, prior to initiating this section 2241 action, Stucker did not seek review of her claim through the BOP's multistage administrative grievance process set forth in 28 C.F.R. §§ 542.10-.19. Doc. 8 at 3-5. Second, the government argues that Stucker's petition is premature because the BOP has until January 2022 to implement the provisions of the FSA. *Id.* at 6-9. Thus, the government argues that the District Court should dismiss Stucker's section 2241 petition without prejudice. *Id.* at 5, 9. On September 23, 2021, after Stucker failed to respond to the government's motion to dismiss, the undersigned ordered Stucker to respond if she opposed the government's motion. Doc. 9. Stucker has not filed a response in opposition to the government's motion to dismiss.

## II. DISCUSSION

A. **Failure to Exhaust Administrative Remedies**

Before commencing a section 2241 proceeding, an inmate must exhaust available administrative remedies. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474-75 (11th Cir. 2015) (noting that courts may not "disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense."); *Rodriguez v.*

*Lamer*, 60 F.3d 745, 747 (11th Cir. 1995) ("[A]n inmate must typically exhaust his or her administrative remedies with the BOP before seeking judicial relief."). "In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules." *Davis v. Warden, FCC Coleman—USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) (per curiam) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

1. ***The BOP's Administrative Grievance Procedure***

The BOP has promulgated a four-level administrative grievance procedure for prisoner complaints "to allow an inmate to seek formal review of an issue relating to *any* aspect" of her confinement. 28 C.F.R. § 542.10(a) (emphasis added). Generally, a federal prisoner exhausts her administrative remedies by first attempting to resolve the matter informally. *Id.* § 542.13(a). If informal resolution is unsuccessful, the prisoner then must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)." *Id.* § 542.14(a). "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Finally, an "inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date

the Regional Director signed the response." *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18.

### 2. *Adjudication of Motions to Dismiss for Failure to Exhaust*

Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008); *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 855 (11th Cir. 2020) (per curiam). First, the court looks to the factual allegations in the respondent's motion and those in the petitioner's response. *Turner*, 541 F.3d at 1082. If the respective assertions conflict, the court must presume that the petitioner's version is true. "If, in that light, the [respondent] is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008).

"If the complaint is not subject to dismissal at the first step, . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The [respondent] bear[s] the burden of proving that the [petitioner] has failed to exhaust his available administrative remedies." *Id.* Upon making findings

on the disputed issues of fact, the court then decides whether, under those findings, the petitioner has exhausted her available administrative remedies.

### 3. *Application of Turner to Stucker's Case*

In its motion to dismiss, the government argues that Stucker failed to exhaust her administrative remedies before filing her section 2241 petition. Doc. 8 at 4. According to the government, Stucker filed a BP-9 on November 18, 2020, claiming that she was entitled to ETCs under the FSA. *Id.* at 4; Doc. 8-6 at 4. On December 23, 2020, the warden denied Stucker's request. Doc. 8 at 4; Doc. 8-6 at 3. The government asserts that Stucker failed to appeal the warden's decision as required by the BOP's policy. Doc. 8 at 4.

In her petition, Stucker concedes that she failed to exhaust her administrative remedies. In the section of the petition that asks whether Stucker presented her claim to the BOP, Stucker checked both "Yes" and "No." Doc. 1 at 3. Stucker then explained that she seeks an "exhaustion waiver because [her claim] is based on statutory construction which is exempt." *Id.* Later in her petition, Stucker stated the following:

> [Stucker] is aware of the Administrative Remedy process through the [BOP]. She seeks the exhaustion waiver for habeas corpus. The dispute of statutory construction which is exempt from the exhaustion requirement. (*See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016). Exhaustion is not required with regard

to claims which turn only on statutory construction (citing *Harris v. Martin*, 792 F.2d 52, 54 (3d Cir. 1986).

Doc. 1 at 9-10.

It is clear, therefore, that Stucker did not properly exhaust her available remedies before filing her section 2241 petition. To escape this fact, Stucker proffers a two-sentence argument—and cites two decisions from the Third Circuit—that she was not required to exhaust her administrative remedies because her claim turns "only on statutory construction." *Id.* Two conclusory sentences are insufficient to carry a petitioner's burden of demonstrating that an exception to the exhaustion requirement applies. *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). Courts need not consider undeveloped arguments regarding exceptions to the exhaustion requirement. *Jaimes*, 168 F. App'x at 359 (noting that the district court did not err in dismissing for failure to exhaust when the petitioner did not "adequately explain why administrative review would prove futile"). For this reason alone, Stucker's argument fails.

Stucker's argument fails for a second, independent reason: she does not identify any statutory-construction issue that the District Court must or should resolve in this case. Stucker instead seeks only to have the court order the BOP to award ETCs for her completion of recidivism-reduction programming. Without an

issue of statutory construction for the District Court to resolve, the so-called "statutory construction" exemption is not applicable to this case. For this reason, too, Stucker has failed to demonstrate that she is somehow exempted from the administrative-exhaustion requirement. *See Toussaint v. Knight*, No. 6:21-cv-764-HMH/KFM, 2021 WL 2635887, at *4 (D.S.C. June 4, 2021) (rejecting the petitioner's contention that he was not required to exhaust because his claim turned on statutory interpretation when the petition failed to identify any issue of statutory construction that the court was required to resolve), *report and recommendation adopted*, 2021 WL 2635479 (D.S.C. June 25, 2021).

Furthermore, even if Stucker had developed her argument and there was a statutory-construction issue to be resolved, several federal courts have rejected the application of the "statutory construction" exemption to the FSA. *Cannata v. United States*, No. 4:21-cv-283-MW/HTC, 2021 WL 4254942, at *1 (N.D. Fla. Aug. 18, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 4244283 (N.D. Fla. Sept. 17, 2021). Indeed, only one district court has applied this exception to an ETCs claim. *Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613, at *2 (D.N.J. Aug. 25, 2020). Even that court specifically noted that the respondents had resolved all relevant factual disputes by admitting that the petitioner had completed the authorized programs and earned the ETCs in question. *Id.* The

majority of courts, however, have routinely declined to extend the "statutory construction" exemption when there are factual disputes. *Cannata*, 2021 WL 4254942, at *2; *Caron v. Garrett*, No. 7:21-CV-385-MHH-GMB, 2021 WL 2672049, at *2 (N.D. Ala. June 4, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 2661963 (N.D. Ala. June 29, 2021). These courts have held that a claim regarding ETCs generally is subject to the exhaustion requirement.

Here, the government has not conceded that Stucker is eligible to participate in any recidivism-reduction programs. It also has not conceded that Stucker in fact participated in such programs, or the amount of ETCs, if any, that Stucker has accumulated by participating in such programs. Therefore, potential factual disputes remain as to whether Stucker is entitled to the alleged 240 days of ETCs. Development of these facts during the administrative process likely is necessary to the adjudication of Stucker's claim, and Stucker has not shown that she will suffer irreparable harm by exhausting her administrative remedies.

Accordingly, Stucker has failed to exhaust her administrative remedies and she has failed to demonstrate that any exception to the exhaustion requirement is applicable to her case.

B.   <u>**Stucker's Claim is Premature**</u>

The District Court should dismiss Stucker's petition for a second, independent reason: Stucker's claim is premature.

The FSA was signed into law on December 21, 2018. Under the FSA, an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities" is entitled to earn 10 days of time credits for every 30 days of successful participation in the evidence-based recidivism-reduction programming. 18 U.S.C. § 3632(d)(4)(A)(i). The FSA provided for the development for the framework of evaluation and the framework for the evidence-based recidivism-reeducation programming over a period of several months.

Specifically, within 210 days after the date of enactment of the FSA, the "Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system." *See* 18 U.S.C. § 3632(a). The FSA required that within 180 days—*i.e.*, by January 2020—the BOP complete the risk and needs assessment for each prisoner. *Id.* In the FSA, Congress provided the BOP an additional two years after it completed the risk and needs assessment for each prisoner to "phase in" implementation of the program. 18 U.S.C. § 3621(h)(2)(A). Thus, under the FSA, the BOP has until January 2022 to "phase

in" implementation of the program. In other words, "the statute contemplates a two-year period for the development of programs and the validation of risk assessment tools but does not require the BOP to truncate that process and begin to award ETCs during" this "phase in" period. *Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *3 (S.D.N.Y. Apr. 20, 2021). The BOP, therefore, "is not required to . . . calculate or apply" ETCs for participation in evidence-based recidivism-reduction programming until January 15, 2022. *Id.*; *Holt v. Warden*, No. 4:20-CV-04064-RAL, 2021 WL 1925503, at *5 (D.S.D. May 13, 2021); *see Cannata*, 2021 WL 4254942, at *3.

Beyond her failure to exhaust her administrative remedies, therefore, Stucker's claim is premature. This is yet another reason for the District Court to deny Stucker's claim. *Holt*, 2021 WL 1925503, at *5 (noting that the majority of cases have found such claims premature during the "phase in" period); *Cohen*, 2021 WL 1549917, at *3 (collecting cases) (noting that the majority of cases have found similar claims premature during the "phase in" period).

### III. CONCLUSION

Because Stucker failed to exhaust her administrative remedies prior to filing her petition, and her claim is premature, the undersigned respectfully **RECOMMENDS** that:

1. Stucker's petition for writ of habeas corpus filed under 28 U.S.C. § 2241, Doc. 1, be **DISMISSED** without prejudice.

2. The clerk of the court be directed to close this case file.

At Pensacola, Florida, this 25th day of October, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636. If the parties dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**